This is an appeal from an order overruling a demurrer to an amended complaint. The complaint purports to allege two causes of action. It is quite lengthy and, in our opinion, a proper understanding of the case may be had without setting forth the complaint in *Page 489 
full. It is alleged that one Patrick Berry, a police officer employed by the city of Fargo, on July 20, 1925, was driving an automobile on one of the most congested streets in the city known as Broadway, returning from having answered a call at the scene of an automobile collision; that the car he was driving belonged to the city and that the city had negligently failed to provide it with proper brakes so that it could be stopped within a reasonable distance; that, in driving the car and in approaching the plaintiff, Berry failed and neglected to give any warning of his approach and unlawfully drove the automobile on the left-hand side of the street at a high and excessive rate of speed, and failed to keep his eyes on the street ahead of him while driving and to observe the presence of the plaintiff; that, by reason of the wrongful and negligence acts of the defendant, Berry drove the automobile against the plaintiff, inflicting the injuries complained of. In addition to alleging the negligence acts of the policeman, the complaint specifically charges, in the first cause of action, the negligent failure on the part of the city to provide the automobiles with proper brakes, making it a dangerous instrumentality to be operated on the public streets.
For a second cause of action, the plaintiff alleges that the city, in equipping and maintaining its various departments, used and kept large numbers of motor-driven vehicles; that the vehicles were used in connection with the ordinary duty of policing the streets and for the transporting of the various officers and employees of the city; that various classes of vehicles were permitted to be used by various persons employed by the city, not only in the performance of its governmental functions but for the convenience of such officers and employees, and not merely in instances of reasonable necessity; that, in disregard of the city's obligation to maintain a safe condition of streets, it permits, acquiesces in, countenances and approves of the operation of its motor-driven vehicles in disregard of traffic regulations and the speed limit prescribed by ordinance, and permits their operation upon the streets at high and dangerous rates of speed without regard to crossing stops and danger signals and without regard to the law of the road requiring vehicles to keep to the right side, thereby at frequent intervals rendering the condition of the streets unsafe for travel by vehicles and pedestrians; all without regard to exigencies making it necessary *Page 490 
in the ordinary and reasonable performance of governmental functions to disregard traffic regulations or speed limits.
It is alleged that on the 20th day of July, the plaintiff, while rightfully traveling as a pedestrian on the public streets of Fargo, on Broadway, while the ordinary condition of travel upon said streets existed and while in the exercise of due care and caution, was struck by one of the automobiles being operated by the city of Fargo in the immediate control of Patrick Berry; that the automobile was driven at a high and excessive rate of speed, about thirty-five miles per hour, driven upon the left-hand side of the street in disregard of the laws of the road, without the driver keeping a due lookout or exercising ordinary reasonable care for the protection of people upon the streets and without having the automobile under control, to his knowledge the automobile being unequipped with proper brakes; that the operation of the automobile upon the streets at the time and under the existing circumstances made the condition of the streets unsafe for travel by pedestrians or people in other vehicles, which condition was unknown to the plaintiff or other travelers upon the street; that the operation of the automobile in the manner described was part of the general plan, scheme or manner of the operation of motor vehicles in the control of the city upon its streets, making the use thereof dangerous to pedestrians. The complaint charges the failure to provide the automobile with brakes or appliances of any kind which would enable the driver to stop within a reasonable distance and the inability of the driver to stop on that account. It charges the defendant with actual knowledge of such condition or that in the exercise of due and reasonable care it should have known. It charges the absence of any reasonable necessity for the use of the car in the manner it was then being used by Berry. It alleges that he was not at the time engaged in any ordinary policing function or duty; that he was not engaged in the carrying out of any governmental function of the city of Fargo; but it specifically alleges that information had come to the officers of the city respecting a collision of automobiles on one of the outlying streets and that Berry had been directed to proceed with the automobile in question to the scene for the purpose of obtaining information with reference to the character of the accident, and that at the time of the accident he was returning to report to the officers. It is alleged, however, that no exigency existed *Page 491 
requiring the use of excessive speed or the driving of the car upon the wrong side of the street.
The demurrer challenges the sufficiency of the allegations in substance above enumerated to state a cause of action. The distinction between the first and second causes of action is somewhat obscure. It seems, however, that in the allegations respecting the first cause the pleader has confined himself to the circumstances in which the car in question was operated by the defendant Berry with the purpose of charging that its operation in the manner described constituted a danger spot in the street at the time and place of the accident and that the breach of duty consisted in the failure to keep the street safe at that particular time and place; while in the second cause there are allegations charging the defendant city with certain negligent practices in permitting the use of automobiles by its officers and employees generally, resulting in an unsafe condition of the public streets. Coupled with these are allegations setting forth the specific facts in connection with the operation of the automobile in question at the time of the accident, showing that, while there were specific acts of negligence such as the failure to have the car properly equipped with brakes, the violation of the laws of the road and of speed limits without reasonable necessity therefor, the accident nevertheless occurred as a result of the general unsafe condition which was allowed to exist with the city's knowledge and acquiescence. The appellant challenges the sufficiency of the allegations from either viewpoint and, in addition, relies upon §§ 3627 and 3628 of the Compiled Laws for 1913, which require claims for damages alleged to have arisen from a defective, unsafe, dangerous or obstructed condition of a street or from negligence of city authorities in respect to the street to be filed within thirty days of the happening of the injury, and further provide that no action may be maintained unless the plaintiff shall plead and prove the filing of such claim.
The facts alleged in both causes of action make it clear that the defendant Berry at the time of the accident was engaged upon a mission in the capacity of a policeman. The allegations pointing to the non-existence of any necessity at the time for his driving in the manner charged and the lack of necessity for his use af the automobile at all, are, we believe, to be properly considered only in connection with the description of the manner in which the city permitted its cars to be *Page 492 
used and discharged its obligation to keep its streets safe. Neither the choice of means employed, nor the manner of execution affect the character of the function. Counsel for the plaintiff concede that the city is not liable for the tort of an employee while engaged in the performance of a governmental function, but they contend that the commission of a tort by an employee in circumstances which would clothe the city with immunity therefor does not negative the concurrent breach of another duty. It is argued that if the facts pleaded are such as to show a breach of duty for which a city may be liable, it will not be exempted merely on account of the fact that the active agent was performing a governmental function. In this connection the case of Hillstrom v. St. Paul, 134 Minn. 451, L.R.A. 1917B, 548, 159 N.W. 1076, is cited. In that case a fire alarm box was attached to a pole in the street. It was part of the equipment maintained for fire protection, which is a governmental function. The pole rotted and fell and killed the plaintiff's son. The court held that, while the city was not liable for negligence in the performance of the governmental function in question, it was nevertheless liable for permitting the dangerous condition of its streets to exist.
Another authority more directly in point and much relied upon is the expression of the Supreme Court of Florida in the case of Maxwell v. Miami, 87 Fla. 107, 33 A.L.R. 682, 100 So. 147. The court reviewed the ruling of the trial court sustaining a demurrer to the declaration which charged the plaintiff's injuries to have resulted from a collision with an automobile operated by an officer or employee of the city in connection with the fire department. It was alleged that, at the time of the accident and for many months before, the automobile was and had been used to transport the chief of the fire department, or other directors of operation, to the scene of fires. It was charged that at the time in question the car was driven in a grossly wanton and negligent manner and at a high and dangerous and grossly negligent rate of speed. The court held that, though the operation of the fire department may be technically denominated a governmental function, the city might nevertheless be liable for injuries caused by negligence in not keeping its streets in a reasonably safe condition for lawful use and for injuries caused by negligent operations, or conditions upon the streets that amount to nuisances. The gist of the decision is, perhaps, *Page 493 
the expression found on pages 148 and 149 of the Southern Reporter (87 Fla. 112, 33 A.L.R. 685, 686):
"Whether the operation of a fire department by the city may be technically denominated a governmental or a corporate function, the rule in this state is that a municipality is liable for injuries caused by negligence in not keeping its streets in a reasonably safe condition for lawful uses, and for injuries caused by negligent operations or conditions upon the streets that amount to a nuisance [citing cases.] . . .
"The operation upon the public streets of an automobile as a part of the fire extinguishment equipment of a city, is not such an essentially or exclusively governmental function as to exempt the city from liability for injuries to persons lawfully using the streets, when such injuries are solely caused by the grossly negligent manner in which the automobile is driven at a high and dangerous rate of speed upon the streets on which persons are lawfully traveling on foot or in permissible vehicles. While the right of way should be given to the passage of fire-fighting equipment when a destructive fire is or is supposed to be in progress, yet the rights of persons lawfully upon the streets may not be violated by the reckless driving of fire-extinguishing equipment automobiles, thereby causing injuries to others who are in no way at fault in the premises. The public duties of municipalities are by law required to be performed so as to do no injury to private rights that is not immediately essential to conserve the public peace, health, safety, morals and general welfare. See Gonzales v. Pensacola, 65 Fla. 241, 61 So. 503, Ann. Cas. 1915C, 1290. This is the limit of the police power."
It was further said that reckless driving of fire trucks on the streets was not essential to efficiency in fire fighting; that it rendered the streets unsafe and when permitted by the city liability might arise therefrom if persons and property should be injured as a consequence. It was also suggested that the city had power to abate nuisances and to regulate the speed at which automobiles might be driven through the streets and that that power carried with it the duty to prevent or abate nuisances and to regulate the speed at which vehicles were driven in the interest of public safety. It is difficult to determine whether the liability in the Florida case was predicated upon the negligent act of the driver of an automobile while being used as part of the fire-fighting equipment of the *Page 494 
city, whether based upon a violation of the duty to keep the streets reasonably safe by permitting its own vehicles to be so operated as to render them unsafe, or whether it was grounded on the still broader basis that there was a failure to exercise its police power in the interest of public safety. It must be conceded that the case lends substantial support to the contention of counsel for the plaintiff in the instant case, but we are of the opinion that the result cannot be harmonized with fundamental principles of law which are well established in this jurisdiction. Anderson v. Board of Education, 49 N.D. 181, 190 N.W. 807; Montain v. Fargo, 38 N.D. 432, L.R.A. 1918C, 600, 166 N.W. 416, Ann. Cas. 1918D, 826; Moulton v. Fargo, 39 N.D. 502, L.R.A. 1918D, 1108, 167 N.W. 717.
It is elementary that a municipality is not liable for the tort of its agent committed in the course of the performance of a governmental duty and that it is not liable for the manner in which it exercises its governmental authority, nor for the failure to exercise it properly. The law is as expressed by Dillon on Municipal Corporations (4 Dill. 5th ed. § 1627):
"Unless there be a valid contract creating, or a statute declaring, the liability, a municipal corporation is not bound tosecure a perfect execution of its by-laws, relating to its public powers, and it is not responsible civilly for neglect of duty on the part of its officers in respect to their enforcement, although such neglect results in injuries to private persons which would otherwise not have happened."
As illustrative of the principle stated, the author cites the well-known Georgia case of Rivers v. Augusta, 65 Ga. 376, 38 Am. Rep. 787, where the plaintiff was gored by a cow running at large in the streets contrary to an ordinance, the operation of which had been suspended on the ground that the growth of weeds and grass was too luxuriant for comfort, health and good appearance. Nor does the failure to enforce an ordinance making it unlawful to permit swine to run at large in the streets render the city liable for personal injuries occasioned thereby. Levy v. New York, 1 Sandf. 465.
The rule that subjects a municipality to liability for the failure to maintain its streets in a reasonably safe condition, though generally established and well approved, is nevertheless exceptional and anomalous. 4 Dill. Mun. Corp. 5th Ed. §§ 1714, 1715. This exception, *Page 495 
however, is predicated upon a duty with respect to the physical condition of the streets, rather than with respect to the manner in which it shall exercise other governmental powers, which may in turn affect the convenience or safety of those who may have occasion to use the public streets. The failure to arrest pickpockets and gunmen may render the streets as unsafe at night as the violation of an ordinance limiting the speed of automobiles. Yet it is universally held that the city may not be held for the failure to efficiently exercise its powers of government. The failure on the part of the city to abate a nuisance upon private property which affects the safety of travel upon the public streets, such, for instance, as shooting galleries, does not result in liability to one who is injured. Leonard v. Hornellsville, 41 App. Div. 106, 58 N.Y. Supp. 266; Hubbell v. Viroqua, 67 Wis. 343, 58 Am. Rep. 866, 30 N.W. 847. To seize upon the exceptional doctrine that holds a city to liability on account of the unsafe condition of the streets as a means of qualifying the rule of nonliability, involves a sacrifice of logic to supposed expediency. The obligation that a city owes with respect to the maintenance of its streets in a safe condition does not differ in character or in the consequences of its violation from the numerous other duties it owes to its inhabitants, and the governmental power vested in it for the protection of the public is all to the same purpose, viz.: that it shall be used to promote the safety, comfort and convenience of the citizens. The failure to enforce quarantine regulations may involve the spread of a contagious disease, leaving death in its wake. The sacrifice of life as a result of the failure to exercise this governmental function is as deplorable as though sacrificed under the wheels of a speeding automobile, and there is even more direct causal connection in the former case than the latter because of the independent act of negligence on the part of the driver of the vehicle. In our opinion, a holding that a municipality is liable on account of an unsafe condition of the streets, where such unsafety is due to no physical imperfection, would involve the modification of well-established principles of law.
The circumstance that the automobile in question was owned by the city and the further circumstance that the city had countenanced rather indiscriminate use of its automobiles by its officers and servants, and the violation by them of its traffic laws, do not, in our opinion, alter the *Page 496 
situation. The car in question concededly was being used by one engaged in the performance of a governmental duty. If the city is not liable for his single act of negligence or misfeasance, it could not be rendered liable because his conduct and that of other officers and agents similarly engaged had been wrongful or negligent on prior occasions. There is no satisfactory basis for distinguishing between habitual or repeated violations by officers for whose acts the city is not liable, on account of their governmental character, and the repeated or habitual violations of its ordinances by others to its knowledge. The result of the condition of unsafety to those using the streets is the same.
In our view of the case, it is unnecessary to consider the question arising on §§ 3627 and 3628 of the Compiled Laws for 1913.
For the reasons above stated, the order appealed from is reversed.
CHRISTIANSON, Ch. J., and NUESSLE, BURKE, and JOHNSON, JJ., concur.