[File No. 6935]

HELEN MALONEY, Respondent, v. CITY OF GRAND FORKS, a Municipal Corporation, Appellant.

(15 NW(2d) 769)

Opinion filed September 22, 1944

*Philip R. Bangs,* Special Assistant City Attorney, for appellant.

*Burlness & Shaft,* for respondent.

BURR, J. This is an action to recover for injuries received while walking on a sidewalk. The jury found for the plaintiff. A motion for judgment notwithstanding the verdict or for a new trial was denied. Judgment was entered for the plaintiff and from the order denying judgment notwithstanding the verdict and denying a new trial and from the judgment entered defendant appeals. The question is narrowed to one general issue—is any liability of the city shown?

The material facts bearing on this question are: The plaintiff in walking in a southerly direction on South Fourth Street on January 1, 1942, stubbed her toe on a cement slab of the sidewalk and fell, sustaining severe injuries. The sidewalk is one over which there is a great deal of travel, and consists of four lines of cement slabs, each

slab approximately eighteen inches square. One edge of one of the middle slabs had risen above the level at right angles to the sides of the walk. The flare had a northern exposure and was about an inch high at one end and approximately an inch and a quarter at the other. One witness for the plaintiff estimated it slightly higher. The owner of the abutting property repaired the defect ten to fifteen days after the accident. Two other instances of tripping because of this defect were shown although no injury resulted therefrom. This defect existed for at least two years. There is a slight difference in the testimony in regard to the height of the elevation but on this appeal we accept the view of the testimony most favorable to the respondent. See De Moss v. Great Northern R. Co. 67 ND 412, 272 NW 506; Pederson v. O'Rourke, 54 ND 428, 430, 209 NW 798, 799; Armstrong v. McDonald, 72 ND 28, 4 NW(2d) 191.

There is no proof of any actual notice to the city of the existence of this defect. The plaintiff relies upon the continuous existence of a defect in a sidewalk very much in use.

"Constructive notice means notice which the law imputes from the circumstances of the case; and a municipality is chargeable with notice of such defects as ordinary and reasonable diligence would have discovered; or, stated in another way, if facts exist with which ignorance is not compatible, except on the assumption of failure to exercise reasonable care, notice will be presumed." Anderson v. Jamestown, 50 ND 531, 536, 196 NW 753, 754. "Whether a defect in a sidewalk has existed a sufficient length of time and under such circumstances that the city is deemed to have had notice thereof is a question of fact, and not one of law. . . ." Hendershott v. Grand Rapids, 142 Mich 140, 105 NW 140.

A broad general rule with reference to constructive notice of a defect in the sidewalks is laid down in Todd v. Troy, 61 NY 506, 509. Here the court said:

"It was the duty of the city, under its charter, to keep the streets in repair and in suitable condition for public travel, and any person suffering damage or injury, without any fault on his part from a neglect of this duty, has a cause of action against the city. Before the city can be made liable in any case, it must be shown that it had notice of the

bad condition of the street. This notice can be either express or constructive. By constructive notice is meant such notice as the law imputes from the circumstances of the case. It is the duty of the municipal authorities to exercise an active vigilance over the streets; to see that they are kept in a reasonably safe condition for public travel. They cannot fold their arms and shut their eyes, and say they have no notice."

In Lundon v. Chicago, 83 Ill App 208, the trial court had charged the jury that it was sufficient if "the unsafe condition had lasted long enough so that, in the exercise of reasonable care, the city ought to have known." The court of appeals states:

"The record does not show the city has any such officer, nor indicate where he could be found. The city has no right to claim exemption upon the ground that some particular officer has not been notified of the dangerous condition of a sidewalk. It is the duty of the city's representatives—as, for example, its police or other employes—to notify the proper officer, whose duty it is to repair such places and keep them in order. . . ."

The statement of the law was upheld in Randolph v. Chicago, 315 Ill App 85, 42 NE 2d 143, where the plaintiff had recovered judgment. The trial court granted a new trial, but this action of the trial court was reversed.

The particular officer whose duty it is to oversee and inspect the streets is presumed to do his duty. If he did not, it would be negligence.

"If, therefore, the evidence in this case shows that there was a defect in the sidewalk, of which the city had knowledge, or by the exercise of reasonable diligence ought to have known, and the plaintiff, while exercising proper care, stepped into the hole, and was thereby injured, the municipality would be liable for such damages as ensued; . . ." Keen v. Havre de Grace, 93 Md 34, 48 A 444, 445.

In Annapolis v. Stallings, 125 Md 343, 93 A 974, the same court states that "constructive notice" means "the notice which the law imputes from the fact that the walk had been out of repair such a length of time that the municipal officers could have, by the exercise of due

care, learned of the defect in time to have repaired it before the injury occurred."

Of course, to charge the commissioner of the streets or highways with constructive notice of a defect it must be shown "that defect was there long enough and was of such dangerous character that commissioner by the exercise of reasonable care should have discovered it and remedied it." Falkowski v. MacDonald, 116 Conn 241, 164 A 650.

The commissioner of the streets is required to exercise ordinary care and diligence on his part in the oversight of the streets. If the defect had been there and "existed for such length of time as to have afforded the municipal authorities a reasonable opportunity to have discovered it," then constructive notice of the defect has been established. Tudor v. Louisville, 172 Ky 429, 189 SW 456, 457. The court further states that such negligence when established is the negligence which consists of acts of nonfeasance—the failure to discharge duty. (p 458 of 189 SW)

This same rule is stated thus by the Tennessee Supreme Court:

"If there was a defect in the sidewalk, and that the defect was so patent and obvious as to be generally noticed by persons passing over it, and thus continued to exist for such a length of time prior to the time of the alleged accident as that it might be reasonably inferred that some . . . employe of defendant, whose duty it was to keep the streets in repair, had notice of such defects,'" then the city would have constructive notice. Poole v. Jackson, 93 Tenn 62, 23 SW 57, 59.

If the street mileage is such that one official cannot oversee it all, then it is the duty of the city to furnish sufficient assistance.

This question of constructive notice was submitted to the jury under appropriate instructions. The jury found against the defendant and on this appeal the jury's finding is conclusive.

The defendant sets forth a city ordinance requiring the owner of abutting property to keep the sidewalk in repair and providing penalty for failure to do so. On the appeal, little, if any, stress is laid on this proposition. The municipality cannot shift any burden which rests upon it to the shoulders of the owner of the abutting property, even though it may have the right to compel him "to assist the city

in performing its municipal duty." See Clark v. Stoudt, ante, 165, 12 NW(2d) 708.

The real issue is whether the defect shown is of such a character that it can be said it was for the court to decide the matter of negligence. It is the argument of the defendant that the defect was a trivial one, that "a city is not liable in tort for its failure to remedy or repair small defects and irregularities in the sidewalks caused by natural causes, such as frost, changes in weather, tree roots, etc., which defects and irregularities are common and usual in sidewalks in all municipalities." In support of this contention, defendant cites Braatz v. Fargo, 19 ND 538, 542, 125 NW 1042, 27 LRA(NS) 1169, where we say, "A city cannot be required to keep streets in such condition as to insure the safety of travelers under all circumstances. The measure of its duty in this respect is reasonable care, and it is liable only for neglect to perform this duty."

The defendant argues for a strict construction of the duties of a city, urging, "The rule that subjects a municipality to liability for the failure to maintain its streets in a reasonably safe condition, though generally established and well approved, is nevertheless exceptional and anomalous," citing Hanson v. Berry, 54 ND 487, 494, 209 NW 1002, 1005, 47 ALR 816. The argument is based upon the theory that there is no specific statute specifying liability. Defendant, however, does recognize that the existence of § 3627 of the Comp. Laws, providing how claims may be filed against a city for "injuries alleged to have arisen from the defective, unsafe, dangerous or obstructed condition of any street, crosswalk, sidewalk," etc., clearly implies liability on the part of the city for failure to exercise ordinary and reasonable care in keeping sidewalks in a safe condition.

This matter is beyond dispute in this jurisdiction. In Ludlow v. Fargo, 3 ND 485, 57 NW 506, we held: "Cities . . . are charged with full power and responsibility in the matter of streets, sidewalks, . . . In performing such duties, cities are liable in a civil action to persons who, in the exercise of due care, receive injuries caused by negligent acts done . . . by the city officials. . . . The cities . . . are impliedly liable for damages caused by their wrongful or negligent acts, and no express statute making them liable is necessary."

Therein we hold as correct law this instruction given by the trial court:

"The general rule is that, in the case of a highway, a municipal corporation is answerable in damages for the lack of ordinary and reasonable care, and is held to the same rule of negligence which is expected of private persons in the conduct of their business involving a like danger to others."

The specifications of error include the claim that two requests for instructions demanded by the defendant were not given. We have examined them in connection with the charge given and find no reversible error; in fact, defendant on the oral argument admits that even if there were error it did not in any way affect the verdict.

The defendant contends: It was the sole province of the court to decide whether there was such a defect as imposed liability; that the court erred in submitting this issue to the jury; that the court should have ruled the defect proved was so trivial in its character that as the stubbing happened in the daytime, with no obstruction of view, no ice, snow, or any other covering, it was a mere accident if not the result of plaintiff's negligence.

Defects in sidewalks are prolific in lawsuits. The note in 119 ALR 161 et seq shows the trend of decisions in various jurisdictions from the position that a city was not liable for defects, to the position, set forth in Ray v. Salt Lake City, 92 Utah 412, 69 P(2d) 256, 119 ALR 153, that a city is chargeable with knowledge of defects and "the courts cannot arbitrarily determine that to suffer the existence of a particular defect in a street or sidewalk does or does not constitute negligence on the part of a municipality, though when it appears that the case is one upon which reasonable minds would not arrive at a different conclusion, the question may be one of law."

In this state, this latter position is the real test in determining whether the question as to negligence or contributory negligence is a matter of law or for the jury. See Wison v. Oscar H. Kjorlie Co. ante, 134, 12 NW(2d) 526, 527; Schnell v. Northern P. R. Co. 71 ND 369, 380, 1 NW(2d) 56, 62.

As indicative of this change, we refer to Beltz v. Yonkers, 74 Hun (NY) 73, 26 NYS 106. The trial court held, in 1893, that a depression, stated later in the Court of Appeals to be "2½ inches deep, 7

inches wide, and 2 feet 6 inches" in length permitted by the city to exist for about four years "was sufficient to charge it with constructive notice of the existence of the defect in the sidewalk." It held further, "The exercise of proper vigilance and care by the officers of the municipality would have discovered that danger, and caused the reparation of the walk." On appeal (148 NY 67, 42 NE 401, decided in 1895), however, the court of appeals held that though the city permitted that depression to so remain, "it not appearing that any accident had theretofore happened to pedestrians therefrom, as a matter of law, does not render the city liable for injuries to a pedestrian who is thrown by stepping into the depression." However, in Morroney v. New York, 49 Misc 307, 97 NYS 642, decided in 1906, the trial court held "where two artificial flagstones joined, one of the stones being from 1¾ to 2 inches higher than the other, and plaintiff's shoe was so caught in the hole that is required force to remove it," the plaintiff could recover "though such defect had existed for more than a year without before causing an accident," and that such defect was not "such a defect as the court could say as a matter of law was not dangerous." There was an elevation causing a gap in which the toe was caught. This case was affirmed in 1907 (117 App Div 843, 103 NYS 1135) and the court of appeals affirmed the decision in 1908. (See 190 NY 560, 83 NE 1128.) While the facts in these cases mentioned are not identical with the facts in the case at bar, nevertheless they are illuminating.

This jurisdiction has never subscribed to the doctrine that before the existence of a defect can be made the basis of an action for damages, it must be shown that prior thereto pedestrians had injured themselves because of such defect. It is not a case of a dog and his first bite. The first tripping may be actionable as well as the twenty-first.

The courts of the Dominion to the north seem to be in the same state of transition, with gradual change toward a more strict observance of the duties placed upon the municipality. In Anderson v. Toronto, 15 Ont L Rep 643, decided in 1908, it is shown a depression occurred "at the junction of two of the blocks by reason of one of them having sunk below the edge of the other from three-quarters to half an inch. The edge of the higher block had been worn down one-quarter

of an inch by persons walking over it, leaving half an inch of uneven surface. It had been in this condition from eight to ten years."

It was held this was not in itself proof of negligence on the part of the city. The court said, "The burden upon the city authorities is to see that the walks are in a reasonably safe condition for travel; they are not obliged to keep every part accurately level, and slight inequalities of the surface, which may lead to an exceptional slip and fall, are not, therefore, to be accounted chargeable with negligence. It is all a question of degree as to what is or is not an actionable impediment to travel on the highway or sidewalk."

Chancellor Boyd, in deciding the case, said, "An inequality of over an inch was held to be excusable in Ewing v. Toronto (1898) 29 Ont Rep 197; though this decision is binding on me, it was not held in favour by Burton, CJO, in Ewing v. Hewitt (1900) 27 Ont App Rep 296, 299." The case involved in addition a question of whether notice was given to the city and the court held that a sufficient excuse for failure to give notice in time had not been shown. Nevertheless the court passes specifically upon the extent of the depression or elevation.

However, Chancellor Boyd, in Roach v. Port Colborne, 29 Ont Law Rep 69, 13 DLR 646, decided in 1913, held:

"For the municipality to maintain a water pipe projecting above the level of a cement sidewalk so as to be the cause of a pedestrian tripping over it, is a want of repair rendering the corporation liable for the injuries sustained where the pipe could easily and inexpensively have been lowered to the level when the walk was so constructed as to include the pipe as a part thereof, but rising two inches above the level of the walk."

The court, in this latter case, stated: "Long continuance of an obstruction in a street will not relieve a municipal corporation from liability for an injury sustained by a person falling over such obstruction." It held further that "Knowledge on the part of a person injured by falling over an obstruction in a street of the existence thereof is not a defence per se to an action against a municipal corporation for the injuries sustained." A judgment for two thousand dollars was allowed.

It is interesting to note that in this decision the question of triviality

must have been brought to the attention of the court, for the Judge says, "I find no case and have been referred to none in our Courts against the plaintiff's right to recover on the ground of de minimis." Clearly, the Ontario courts are no longer, if ever, bound by precise measurements, nor do they appear to be so impressed with the charge of triviality of defect as to be governed solely thereby.

There is not a rule of negligence for one class of defendants and a different one for another. There may be a difference in what constitutes negligence; but when a duty is established and a breach thereof is shown, then the rule is the same. "There is a duty incumbent upon a city to maintain its sidewalks in a reasonably safe condition for travel in the ordinary modes, by day or by night." Anderson v. Jamestown, 50 ND 531, 196 NW 753.

There is a place within the twilight zone between breach of duty and discharge of duty which may be difficult to determine. Could danger to a pedestrian, because of the condition shown here, be reasonably anticipated? Can it be said "reasonable men" could differ as to whether there was a breach of duty? Two juries of twelve each found there was negligence—other "reasonable men" might find otherwise. "Negligence, whether contributory or primary, is a question of fact, never of law, unless the established or conceded facts from which the inference must be drawn admit of but one conclusion by reasonable men." Bagg v. Otter Tail Power Co. 70 ND 704, 705, 297 NW 774.

The elevation shown in this case is slight and defendant urges the question has reached the vanishing point. May reasonable men so say? Fundamentally where this point is must be determined by the jury. In Greer v. Des Moines, 183 Iowa 837, 167 NW 635, the elevation in the cement walk was from one to three inches, caused by roots or growth of a tree; in Ray v. Salt Lake City, 92 Utah 412, 69 P(2d) 256, 119 ALR 153, the elevation was from one-fourth of an inch to seven-eighths of an inch; in Dayton v. Lory, 169 Ky 94, 183 SW 252, the elevation was from one and one-half inches to two inches; in Sears v. Greenfield, 287 Mass 445, 192 NE 1, the projection was an inch and a half above the next concrete block; in George v. Malden, 274 Mass 606, 175 NE 53, the elevation of the cement block above the other was an inch and a half, possibly a little more; in Moroney v. New

York, 117 App Div 843, 103 NYS 1135, the elevation was an inch and a half to two inches; in Quinn v. Stedman, 50 RI 153, 146 A 618, 65 ALR 375, decided in 1929, the irregularity was an inch and a quarter. In each case a verdict showing negligence because thereof was sustained. There are many other cases to the same effect and as many to the contrary may be found.

Philadelphia, W. & B. R. Co. v. Fronk, 67 Md 339, 10 A 204, 205, 1 Am St Rep 390, quotes from Lord Chancellor Cairns in Metropolitan R. Co. v. Jackson, LR 3 App Cas 197, 18 Eng Rul Cas 677—HL, as follows:

"It would be a serious inroad on the province of the jury if, in a case where there are facts from which negligence may be reasonably inferred, the judge were to withdraw the case from the jury upon the ground that, in his opinion, negligence ought not to be inferred; and it would, on the other hand, place in the hands of the jurors a power which might be exercised in the most arbitrary manner, if they were at liberty to hold that negligence might be inferred from any state of facts whatever."

This statement meets with our approval. It is not for the court or the jury to lay down a mathematical rule as a line of division, saying, "Hitherto shalt thou come but no further." As stated in Shafer v. Philadelphia, 60 Pa Super Ct 256, what constitutes such "a slight inequality in the surface, as to excuse its presence and release the city of liability therefor cannot be definitely stated. Each case must necessarily be determined by the surrounding circumstances and generally the matter must be left to the jury."

Time with reference to day or night, age of the pedestrian, continuity of defect, character of the defect, and a multitude of other features must be considered. A defect may be a potential cause of danger and yet in one case damages for injuries therefrom may not be recoverable and in another case they may. Thus each case is to be judged by its own circumstances and the actual facts are to be determined primarily by the jury. A slight defect will not put a pedestrian upon his guard the same as a large and extremely obvious one. There is a delicate balance in such matter as this, but as stated in Kuntz v. Pittsburgh, 123 P Super Ct 394, 187 A 287, 289, "an irregularity may be so slight

that the court is required as a matter of law to say that such unevenness is not evidence of lack of reasonable care, but there is a shadow zone where such question must be submitted to a jury whose duty it is to take into account all the circumstances. To hold otherwise would result in the court ultimately fixing the dividing line to the fraction of an inch, a result which is absurd."

While the doctrine of contributory negligence is set up and was submitted to the jury, we do not need to consider it on this motion for judgment notwithstanding the verdict. On that issue the jury found against the defendant and there was evidence on the matter justifying submission.

As to the matter of the denial of a new trial, the question has been practically withdrawn. No new trial is now sought. It is conceded the amount allowed is reasonable, if the city be negligent, and the whole matter was submitted to us by appellant on the theory that if the rule in this jurisdiction is that such a question as is involved in this case should be submitted to the jury, then the judgment should be affirmed. We hold the trial court was correct in submitting the question to the jury and therefore the verdict of the jury is binding. The judgment is affirmed.

MORRIS, Ch. J., and CHRISTIANSON, BURKE and NUESSLE, JJ., concur.