**Roy J. GOLDENBERG, Plaintiff-Appellee,**

v.

**WORLD WIDE SHIPPERS AND MOVERS OF CHICAGO, Inc., Defendant-Appellant.**

**No. 11676.**

United States Court of Appeals Seventh Circuit.

July 26, 1956.

4. The remedy provided by P.L. 532 is limited to claims by "owner[s] or operator[s] of a gold mine or gold placer operation."

H. Howard Jonesi, Edward A. Biggs, Jr., Chicago, Ill., for appellant.

Carl L. Steiner, Arthur Morse, David Axelrod, Chicago, Ill., Axelrod, Good-

man & Steiner, Chicago, Ill., of counsel, for plaintiff-appellee.

Before DUFFY, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The plaintiffs, Roy J. Goldenberg and Max G. Goldenberg, are partners under the partnership name of Roy J. Goldenberg. They live in California and their business consists of auctioning furniture. In 1951 Max Goldenberg came to Chicago and purchased the stock of A. Grosfeld, a furniture manufacturer. He contacted the defendant in regard to shipping the furniture to California where it would be sold at auction. The parties signed a contract which was actually one of the defendant's printed forms, entitled "Shipping Order." By agreement of both parties certain paragraphs of the form had been crossed out and the following statement written in:

"$5.75 per cwt. for pickup, packing, crating and loading into freight car consignee to pay freight charges at rate quoted."

Max Goldenberg then returned to California, and the furniture was eventually shipped: three loads by railway freight car and one by truck.

When the furniture shipped by freight arrived it was badly damaged. Max and Roy Goldenberg sued the defendant, World Wide Shippers and Movers, alleging that the damage was caused by the defendant's failure to crate the furniture as required by the contract. The cause was heard below without a jury, and the trial judge found for the plaintiffs. Damages of $71,519.46 were awarded based upon the cost of repairing, the difference between the price brought by the repaired furniture and the amount it would have brought whole and new, the rent for a warehouse obtained in anticipation of receipt of the furniture, and the additional freight charge because of improper packing. The defendant is here appealing that judgment.

The first argument made by defendant is that the trial court erred in allowing Roy Goldenberg, originally the sole plaintiff, to amend his complaint by adding his partner, Max Goldenberg, and raising the amount of damages demanded from $60,000.00 to $100,000.00. Defendant complains first that he was not given enough time to determine whether Max was really Roy's partner or the amendment "was merely a device to make the testimony of Max Goldenberg available." As the plaintiffs point out, Max Goldenberg's testimony was available whether he was a party or not. The defendant had almost two years, between commencement of the suit and the hearing, to discover the nature of the plaintiff's business, who his witnesses would be, etc. It appears that Max and Roy Goldenberg were actually partners, and Max was therefore properly joined as party plaintiff. The argument that the addition of Max would change part of the defense because of a California statute, West's Ann.Business and Professions Code, § 19049 et seq., requiring that those in the furniture business register and obtain a license before they can have access to the courts, is completely without merit. The contract as to "pickup, packing, crating and loading into freight cars," was made in Illinois and contemplated full performance within that state. The laws of California are clearly not applicable. Shafer v. Reo Motors, 3 Cir., 205 F.2d 685.

Allowing the plaintiffs to raise the amount of damages claimed was also proper under Rule 15 of the Federal Rules of Civil Procedure, 28 U.S.C.A. The statement in defendant's brief (p. 7) that, "it must be borne in mind that two days is a very short time to prepare the defense to a suit which has been increased from $60,000.00 to $100,000.-00," is completely ridiculous. This amendment did not change a single issue in the case, and the defendant had had almost two years in which to discover the specific damages for which the

plaintiffs were going to claim compensation.

The defendant also claims that the contract itself bars the plaintiffs' recovery. The back of the order form was covered with small print which began by saying that "In consideration of the reduced rate made on the shipment, it is understood that the following conditions and stipulations will apply." The two "conditions and stipulations" that the defendant claims apply here are that liability is limited to ten cents per pound, and that claim of loss must be made to World Wide within thirty days of arrival of goods.

■ There are several answers to this argument. The most basic answer and one that applies to both of the conditions upon which defendant relies is that the small print on the reverse side of the order form is not part of the contract which these parties made. In his decision given in open court the trial judge stated:

"Mr. Goldenberg says that he understood the first contract submitted provided for a liability of ten cents per pound and that he would not have anything to do with that kind of a contract. And the contract which was executed by Mr. Goldenberg has five paragraphs stricken out. And when you strike out those paragraphs there is nothing within that paper which was signed by the parties which reads into it the fine print on the back of the paper."

We agree with the trial court in this regard. Max Goldenberg's testimony makes it clear that he did not agree to the contract as printed on the defendant's shipping order, and that the defendant altered the order before the parties signed. The order itself which is in evidence shows that several paragraphs have been crossed out. One of the sentences that appears to us to be crossed out reads:

"The terms and conditions of the Shipping order and agreement on the reverse side hereof are accepted."

■ Furthermore, on the question of notice, Max Goldenberg testified that he notified the defendant of the damage after the goods arrived. Also Mr. R. M. Harmon, at that time a furniture packing and loading supervisor for the Western Weighing & Inspection Bureau, testified that he had received correspondence from a railroad representative that a car had arrived in Los Angeles with heavy damage. Mr. Harmon then went to see the defendant, told them of the damage, and tried to stop the second shipment which unfortunately had already been sent. Defendant was not without sufficient knowledge.

■ The next argument made by the defendant is that the plaintiffs cannot seek compensation for damage caused by failure to crate because they requested that the furniture be sent uncrated to save time and expense. This assertion is based upon the testimony of William Cohen and Leon Levine. Mr. Levine was manager of World Wide Shippers and Movers, and Mr. Cohen was his employee who made the estimate on moving plaintiffs' furniture. Their testimony in this regard was in direct contradiction to that of Max Goldenberg. Mr. Goldenberg's testimony was supported by the contract on which was written " * * * for pickup, packing, crating and loading * * *." The trial judge made it clear that he believed Goldenberg, and we cannot review that determination. Banks v. Siegel, 4 Cir., 181 F.2d 309.

■ If there was error in computing damages it was in favor of the defendant and not the plaintiffs. The court awarded $71,519.46 based upon four separate measures of recovery: $64,063.00 for lost profit on the sale of the damaged furniture, $6,212.00 for repairs necessary to make the furniture salable at all, $675.00 rent paid for a warehouse in anticipation of prompt delivery, and $569.49 additional freight cost incurred

because the load was not properly packed. The only figure that the defendant challenges is the $64,063.00 for the value of the furniture in California if it had been delivered there without being damaged. Plaintiff Max Goldenberg testified that the furniture shipped to California had cost him $64,000.00 and was sold for $28,000.00 He said that if the furniture had arrived in good condition the normal markup would have been about fifty per cent and he would have sold it for $100,000.00. The trial judge found from the evidence that plaintiff could reasonably have expected to sell the furniture in California for $100,000.00 if it had arrived there in an undamaged condition.

Courts have refused to allow anticipated profits where they are so speculative as to be illusory. C. W. Denning & Co. v. Suncrest Lumber Co., 4 Cir., 51 F. 2d 945, 948. In Excelsior Motor Mfg. & Supply Co. v. Sound Equipment, 7 Cir., 73 F.2d 725, 729, discussing anticipated profits as a measure of contract damages, we said:

> "The law of damages is clear. The difficulty lies in the application of the law to the facts in particular cases. It is not required that the profits be definitely and absolutely proved. The breach of the contract having prevented such profits from being made, conclusive proof is impossible. The injured party is permitted to introduce evidence tending to establish the damage and no greater degree of certainty of proof is required than for any other fact essential to be established in a civil action." 73 F.2d at page 729.

The only evidence on what the value of the furniture would have been if it had been delivered to California in good condition, was the testimony of Max Goldenberg that the usual and customary markup for auctioned new furniture was fifty per cent. The defendant did not contest Goldenberg's assertion. The general theory of contract damages is that the injured party should be put in the same position he would have been in if the contract had not been breached. If the contract in this case had been kept, the plaintiffs would have been in possession of the furniture in California undamaged. The trial court accepted the only evidence offered as to the monetary value of the furniture in California and, in the absence of any contrary showing, the court's valuation was correct.

In his decision the trial judge reduced the original cost of the furniture sent to California from $64,000.00 to $63,000.00 apparently through inadvertence. He then subtracted $4,449.50 from that amount for the furniture that did not arrive at all. Therefore, he calculated the profit that would have been made on $58,550.00 worth of furniture instead of $64,000.00. The plaintiffs were entitled to damages, including the additional expenses incurred by plaintiffs because of defendant's breach of contract and the difference between the value of the furniture if it had all been delivered in California in good condition and the value of the furniture as delivered, on *all* the furniture they turned over to defendant in Chicago whether it was merely damaged or lost altogether.

■ In his decision the trial court said: " * * * there is controversy whether some of the items were damaged before they started. And I think the fair thing to do is to deduct that $4,449.50 [cost of the furniture never received in California] from the $63,000.00 * * * which would leave $58,000.00 * * *." The judge apparently held down the amount of damages on the theory that there was some evidence that the furniture was not all in perfect condition when plaintiffs bought it. But there is no finding to that effect, and no evidence as to the actual loss in value, if any, attributable to scratches, etc., on the furniture when plaintiffs purchased it. If the plaintiffs had objected to this below and raised it on appeal they would be entitled to the additional measure of damages.

Certainly the defendant cannot complain about the damages set, because any error in fixing the amount of recovery was not prejudicial to it.

Judgment affirmed.