Josephine ZATINA, Appellee,

v.

GREYHOUND LINES, INC., a Foreign Corporation, and S. E. Wysocki, Appellants.

No. 20632.

United States Court of Appeals, Eighth Circuit.

May 20, 1971.

Aldrich, Circuit Judge, dissented and filed opinion.

James L. Lamb, Degnan, McElroy, Lamb & Camrud, Grand Forks, N. D., for appellants.

E. N. O'Connor, DePuy, Fair & O'Connor, Grafton, N. D., for appellee.

Before ALDRICH,* LAY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

While at a bus terminal-restaurant in Grafton, North Dakota, plaintiff, Mrs. Josephine Zatina, tumbled down a flight of steps and sustained severe and per-

---

\* Of the First Circuit, sitting by designation.

manent injuries. She brought an action alleging that the negligence of the bus terminal-cafe operator, S. E. Wysocki, and Greyhound Lines, Inc. caused her injuries. The district court, Judge Davies, sitting without a jury, awarded the plaintiff $32,500 as damages. The defendants appeal from the district court's judgment. Federal jurisdiction rests upon diversity of citizenship, 28 U.S.C. § 1332, and North Dakota law governs the substantive rights of the parties.

On this appeal, defendants urge the following grounds for reversal of the district court's judgment: (1) the undisputed evidence established that Mrs. Zatina was guilty of contributory negligence as a matter of law in attempting to negotiate a stairway which she knew and recognized to be dangerous; (2) the district court erred in measuring defendants' duty of ordinary care by current architectural standards which require stairways to be built to specified dimensions; and (3) the district court awarded plaintiff an excessive sum as damages. We have reviewed the record on this appeal and reject appellants' contentions.

In brief, the undisputed evidence discloses that Mrs. Zatina, a heavy-set woman of seventy-five years of age, entered the defendants' bus terminal-restaurant at about noon on July 21, 1966, during a rest stop while traveling by bus from Detroit, Michigan, to Saskatchewan, Canada. Defendant Wysocki operated the bus depot facilities under an agency contract with defendant Greyhound. The plaintiff intended to use the rest room facilities located in the basement of the restaurant-depot. The stairway leading to the basement consisted of twelve steps. Plaintiff contends that defects in the stairway caused her to fall as she made her initial step.

The evidence introduced before the district court shows that the distance between the first-floor level and the first step on the stairway deviates from the usual distance between steps on a public stairway. All of the other steps measured seven and one-half to seven and three-quarter inches in height. However, the depth of the riser from the top landing on which the plaintiff stood to the first step was eight and seven-eighths inches on her left and nine and three-quarter inches on her right. The tread measured nine and one-sixth inches, with a slope, as we have already noted, of seven-eighths of an inch from left to right. The stairway measured thirty-nine and five-eighths inches in width. A single handrail was located on the left side of the stairway for descent. Defendant Wysocki admitted that this first step was "worn and kind of dished out" and also had a "slope to the front". He further testified that over the years he had added three layers of tile and one layer of plywood over the first floor at the landing and that the addition of this material increased the distance between the landing and the first step.

According to an architect called as an expert witness by the plaintiff, a seven-inch rise between steps is normal for a public stairway. As noted above, the first step of the stairway in question greatly exceeded this standard. We think it clear that the evidence supports the trial court's determination that the defendants breached their duty to exercise ordinary care to maintain the stairway in a reasonably safe condition for the use of invitees, such as the plaintiff in the instant case. See Huus v. Ringo, 76 N.D. 763, 39 N.W.2d 505 (1949). Although we find no North Dakota cases dealing with such differences in the steps of a stairway, we do note that the North Dakota Supreme Court has ruled that a cement slab in a sidewalk which was elevated one to one and one-quarter inches over adjacent slabs constituted a sufficient variation to present to the jury the question of the sidewalk's negligent maintenance by a municipality. Maloney v. City of Grand Forks, 73 N.D. 445, 15 N.W.2d 769, 775 (1944).

Appellants do not dispute the general finding that they were negli-

gent, but contend that the trial court applied an incorrect standard in determining this negligence. They charge that the trial court erroneously measured their duty according to current architectural standards. In this regard, we think appellants misconstrue the thrust of the architect's testimony, as well as the district court's finding upon the negligence issue. This witness testified that the riser at the first step "is higher than is normally considered proper", that "the top step there far exceeds the height of * * * other risers", and that a seven-inch rise, sometimes slightly more, is a "normal standard for a public stairway". On the basis of this testimony and other evidence, the trial court found that

> "the two defendants allowed a condition to exist which constituted an unreasonable risk of harm to an invitee such as the plaintiff because the depth from the landing from which she stepped to the tread of the step onto which she was trying to step was 1⅞ to 2 inches deeper than normal for a public stairway constructed under accepted architectural standards, a depth too great for her safety. [footnote omitted]

We think it obvious that the district court's use of the term "architectural standards" in this context merely denoted a deviation from the common or usual standard of a public stairway, and not, as interpreted by appellants, some specific architectural or building code requirement.

We turn now to the defendant's claim that plaintiff's conduct constituted contributory negligence as a matter of law. Appellants contend that Mrs. Zatina's deposition testimony establishes that she knew and understood the dangers and risk involved in walking down this particular stairway. The plaintiff testified that she decided to descend the steps on the right side of the stairway, the side lacking a handrail, because two men were ascending the steps on her left. She described the stairway as looking "like it was a hole * * * steep * * * not level * * * like if you shaved them * * * curved." Her testimony indicated that there was sufficient light that she could see all the steps, she could see "everything".

Although the plaintiff characterized the steps as looking like "ladders instead of steps", she was not asked, nor did she testify, concerning any unusual distance between the top landing and the first step. The plaintiff, an emigrant from Lebanon in 1903, who had never learned to read or write the English language, somewhat graphically described the actual fall: *"I put my foot down—the top was wide and I put my foot down, and long way down, and down I went."* We think this evidence indicates that the plaintiff encountered an unusual and unexpected drop in attempting to negotiate the first step, thereby causing her to lose her balance and fall down the stairway.

Appellants forcefully argue here, as they did at the trial, that Mrs. Zatina was aware of all the defects in the stairway and carelessly began her descent without taking reasonable precautions for her own safety. They contend that such conduct constituted contributory negligence as a matter of law. The district court rejected the claim of contributory negligence in finding as follows:

> When she approached the stairway and hesitated before attempting to descend, she noted the steepness of the stairs, the condition of the steps and the lack of a handrail on her right. These characteristics were open and obvious. What was not open and obvious was the dangerous depth of the first riser, a condition concealed to one approaching the stairway from the upper landing. Therefore, it cannot be said that the plaintiff was aware of the danger and failed to exercise ordinary care to avoid injury. Not having knowledge of the hazard nor an appreciation of the risk, plaintiff did not assume the risk of injury when she attempted to descend the

stairs, nor was she in any manner contributorily negligent. [footnote omitted]

While it is true that the depth of the first step was not "concealed" in the ordinary sense in which that term is used, we think the district court was entitled to find that the plaintiff lacked knowledge and appreciation of the danger attributable to the excessive depth of the riser at the first step. Although the general steepness of a stairway is visible to a person standing at the top landing, the vertical height of the first step could be difficult to estimate by one standing almost directly above it. A plaintiff's entry into a potentially dangerous situation does not necessarily bar his or her recovery under North Dakota law. The cases speak of a plaintiff encountering an "obvious peril", Olson v. Cass County Electric Cooperative, Inc., 94 N.W.2d 506, 513 (N.D.1959); of "understanding" or "comprehending" the danger, Pundt v. Huether, 100 N.W.2d 431, 434 (N.D. 1960); and of obtaining the "opportunity to observe and to know the conditions," McCullagh v. Fortune, 76 N.D. 669, 38 N.W.2d 771, 777 (1949).

Although neither party cites a factually similar North Dakota case, we do note that the North Dakota Supreme Court has permitted recovery where a plaintiff, an elderly woman, pulled heavy plasterboards away from a wall, causing them to overbalance and fall on her legs, as a result of which she sustained a serious injury, McCullagh, supra. Recovery was also allowed where a plaintiff used a stepladder with a defective and loose step after examining the ladder, but failed to find the defect (the condition not being obvious), Olson v. Kem Temple Ancient Arabic Order of Mystic Shrine, 78 N.D. 263, 49 N.W.2d 99, 101 (1951).

Applying basic principles, the district court, as the trier of fact, could conclude that Mrs. Zatina did not realize nor appreciate that the vertical distance to the first step was greater than anticipated, and did not apprehend the danger to herself when taking that first step. Under the circumstances here, our limited scope of review does not permit our setting this finding aside. See Parke-Davis and Company v. Stromsodt, 411 F.2d 1390, 1394 (8th Cir. 1969).

Appellants claim that the trial court erred in permitting the plaintiff to amend her complaint to increase the prayer for general damages from $25,000 to $50,000 following the close of testimony, and further erred in awarding the plaintiff an excessive sum by way of damages. We reject both contentions. The power to permit such an amendment to the complaint falls within the sound discretion of the trial court. Rule 15(a), Fed.R.Civ.P.; Goldenberg v. World Wide Shippers & Mov. of Chicago, 236 F.2d 198, 200 (7th Cir. 1956); Peitzman v. City of Illmo, 141 F.2d 956, 962 (8th Cir.), cert. denied, 323 U.S. 718, 65 S.Ct. 47, 89 L.Ed. 577 (1944); see generally 3 Moore, Federal Practice ¶ 15.08[3] (2d ed. 1968).

Nor can we say that the district court committed error in the damage award. The amount entered in the judgment also fell within the ambit of discretionary powers of the district court. This court's comments in Solomon Dehydrating Company v. Guyton, 294 F.2d 439 (8th Cir.), cert. denied, 368 U.S. 929, 82 S.Ct. 366, 7 L.Ed.2d 192 (1961), although written in the context of the excessiveness of a jury verdict, are, nevertheless, applicable here:

We do emphasize again, however, that in our opinion, inadequacy or excessiveness of a verdict is basically, and should be, a matter for the trial court which has had the benefit of hearing the testimony and of observing the demeanor of the witnesses and which knows the community and its standards; that this is a responsibility which, for better working of the judicial process and for other seemingly obvious reasons, is best placed upon its shoulders; and that we shall continue to consider review, as we have said before, not routinely and in every

case, but only in those rare situations where we are pressed to conclude that there is "plain injustice" or a "monstrous" or "shocking" result. [294 F.2d at 447–448]

See also Clark v. Central States Dredging Co., 430 F.2d 63, 67 (8th Cir. 1970), and cases cited therein.

The plaintiff here was hospitalized some sixty-six days for treatment of injuries, including pelvic fractures. The testimony established that she has not been free of pain since this unfortunate accident and will suffer from its effects for the rest of her life. She had previously been an active woman, and the injuries sustained when she fell down the steps played a substantial role in the general deterioration of her health subsequent to the accident. The award of damages was substantial, but so were the injuries sustained. The propriety of a district court's award of damages generally falls within the "clearly erroneous" concept of Rule 52(a), Fed.R. Civ.P. See Neal v. Saga Shipping Co., S.A., 407 F.2d 481, 487–488 (5th Cir.), cert. denied, 395 U.S. 986, 89 S.Ct. 2143, 23 L.Ed.2d 775 (1969); Arthur Murray, Inc. v. Reserve Plan, Inc., 406 F.2d 1138, 1150 (8th Cir. 1969); 5 Moore, Federal Practice ¶ 52.03[1] (2d ed. 1969). Appellants demonstrate no basis for setting aside the district court's damage award.

We find no error, and, accordingly, affirm the district court's judgment.

ALDRICH, Circuit Judge (dissenting).

It is difficult not to be persuaded by Judge Bright's careful opinion. I do not disagree with the conclusion that there was evidence of negligence, nor with the admission of the architect's evidence, on the assumption that it was to show that because the stair was not normal a person would be taken off guard. Indeed, permitting the user to assume the stairs were normal was the negligence. Cf. Maloney v. City of Grand Forks, 73 N.D. 445, 15 N.W.2d 769, 775 (1944). But this plaintiff was not taken off guard. I find it impossible to say that in the light of what in fact was disclosed to her she exercised reasonable care.

This was not a poorly lighted stairway, with no opportunity to observe defects. Nor was plaintiff unable to observe. She stood at the top of the stairs; she looked down; she could see so well that she even counted the steps, an impossible achievement unless she was in a good position to see what was before her. She testified,

"So it looked to me like it was a hole, you know. * * * And I looked down, oh, very steep steps * * *."

"They looked like ladders instead of steps."

She added that they were "not level," and "scraped up."

Q. "And you could see all that?"

A. "Yes, I could."

Plaintiff then proceeded without waiting for a person coming up—a very short wait—to afford her free use of the handrail, and without even looking where she placed her foot.

The district court's response to plaintiff's testimony was that "the dangerous depth of the first riser [was] a condition concealed to one approaching the stairway from the upper landing." With great respect, what does "very steep" mean? And, for good measure, "not level," in terms of an abnormal step? The court cites no North Dakota, or, in fact, any decision that permits such a disregard of tangible, observed evidence. I am obliged to dissent.