**NEPTUNE ORIENT LINES, LTD.,**
Plaintiff–Appellee,

v.

**BURLINGTON NORTHERN AND SANTA FE RAILWAY COMPA- NY, Defendant–Appellant.**

No. 98–17387.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 12, 2000

Filed May 24, 2000

Gordon D. McAuley, Hanson, Bridgett, Marcus, Vlahos & Rudy, San Francisco, California, for the defendant-appellant.

Eric Danoff, Kaye, Rose & Partners, San Francisco, California, for the plaintiff-appellee.

Before: GOODWIN, BRUNETTI, and THOMAS, Circuit Judges.

GOODWIN, Circuit Judge:

Neptune Orient Lines, Ltd. ("Neptune") brought a claim against The Burlington Northern and Santa Fe Railway Company ("Burlington") seeking indemnity and damages. Neptune sought to recover $182,-892.08 which it paid to its subrogor, Nike, Inc. ("Nike") for the loss of a container load of shoes. Neptune moved for summary judgment claiming an amount equal to the market value of the shoes at the destination. Burlington opposed the motion arguing that Nike, and therefore Neptune, was entitled only to replacement cost. The district court granted the motion for summary judgment in favor of Neptune. This appeal followed. We have jurisdiction pursuant to 28 U.S.C. § 1291.

Pursuant to a single through bill of lading, Neptune was to deliver shoes from a manufacturing facility in Jakarta, Indonesia, to Nike's distribution center in Memphis, Tennessee. Neptune subcontracted for Burlington to carry the shipment from Los Angeles, California, to Memphis by rail. While in transit, the shipment was lost or stolen and has not been recovered.

Nike did not declare the value of the cargo on the bill of lading. Nor did Nike notify Burlington that it would lose sales or profits if the shoes were not delivered. Neither Nike nor Neptune declared a value to Burlington nor paid higher freight rates as a result of the value of the cargo.

In 1996, at the time of the loss, Nike routinely pre-sold 90% of the shoes ordered from the manufacturer by receiving orders from retailers. The remaining 10% of the shoes were usually sold soon after being imported. Because Nike changes the models of its shoes so frequently, no replacement shoes could be manufactured to replace lost shipments.

Nike claimed $182,892.08—the wholesale price of the shoes (based on the pre-sales) less costs saved. Neptune paid Nike for its loss in this amount and then sought reimbursement from Burlington. Burlington refused to pay that amount arguing Nike is entitled only to the amount Nike paid the manufacturer, or $94,567.13. Despite the fact that Nike could not actually replace the shoes, Burlington refers to this amount as the replacement cost.

██ This court reviews a grant of summary judgment de novo applying the same standards utilized by the district court. Factual determinations are reviewed for clear error. We also review de novo the district court's selection of a legal standard in computing damages. *See Evanow v. M/V Neptune*, 163 F.3d 1108, 1113–14 (9th Cir.1998).

██ The district court explained the well-settled governing principles applicable to this case. We publish to clarify these deeply-rooted principles in the context of the contemporary law governing interstate and international commerce. The so-called Carmack Amendment, 49 U.S.C. § 11706, determines carrier liability for "transportation in the United States between a place in ... the United States and a place in a foreign country." 49 U.S.C. § 10501(2)(F). In the past we have held that an earlier incarnation of this provision applies to separate inland bills of lading for shipments to or from overseas ports. *See F.J. McCarty Co. v. Southern Pac. Co.*, 428 F.2d 690, 692 (9th Cir.1970). The language of the statute also encompasses the inland leg of an overseas shipment conducted under a single "through" bill of lading, such as the bill we have before us, to the extent that the shipment runs beyond the dominion of the Carriage of Goods by Sea Act. *Cf.* 46 U.S.C. §§ 1300 & 1301(e), 1303(2) (covering carrier liability from the time when the goods are loaded

**1120**

onto the ship until the time when they are discharged).

■ Under the Carmack Amendment, damages are to be measured by "the actual loss or injury to the property." 49 U.S.C. § 11706(a). We have held this to mean "the difference between the market value of the property in the condition in which it should have arrived at its destination and its market value in the [damaged] condition in which it did arrive." *Contempo Metal Furniture Co. of Calif. v. East Texas Motor Freight Lines,* 661 F.2d 761, 764 (9th Cir.1981). Therefore, when the property does not arrive at all, we are left to determine its market value at the destination had it arrived safely.

Burlington claims that Nike's actual loss is only the price it paid to the manufacturer. Burlington argues that any amount in excess of the price paid to the manufacturer violates the rule established by *Hadley v. Baxendale,* 9 Exch. 341, 156 Eng. Rep. 145, 5 Eng. Rul. Cas. 502 (1854), which states that special or consequential damages are not recoverable unless the party was on notice of those special damages at the time of contracting. Burlington cites a long line of cases holding that "lost profits" are not recoverable as special damages. However, as the district court correctly pointed out, each of those cases essentially involves "lost *productivity.*" November 18, 1998, Order Granting Plaintiff's Motion For Summary Judgement; And Vacating Hearing, at 5 (emphasis in original). *Hadley v. Baxendale* and the lost productivity cases cited by Burlington do not address the question before this court.

The question presented to us is whether the amount characterized as "lost markup" by Burlington is correctly viewed as part of the "actual loss." We hold that it is. "Market value at destination" is the proper measure of the actual loss in a situation where, as here, the shipment is lost or destroyed. *See The Ansaldo San Giorgio I v. Rheinstrom Bros. Co.,* 294 U.S. 494, 495–96, 55 S.Ct. 483, 79 L.Ed. 1016 (1935) (affirming "damages [computed] on the basis of the market value of the goods at

destination on the date of arrival."); *Otis McAllister & Co. v. Skibs,* 260 F.2d 181, 183 (9th Cir.1958) (under COGSA and common law "basis of recovery for the usual carriage of goods [is] the value at the point of destination."); *Polaroid Corp. v. Schuster's Express, Inc.,* 484 F.2d 349, 351 (1st Cir.1973); *see also Seguros Banvenez, S.A. v. S/S Oliver Drescher,* 761 F.2d 855, 861 (2d Cir.1985) (measure of damages under COGSA is typically the "market value of the goods at the time and place they were to have been delivered"); *Armada Supply, Inc. v. S/T Agios Nikolas,* 613 F.Supp. 1459, 1469 (S.D.N.Y.1985); *cf. New York Marine & Gen. Ins. Co. v. S/S "MING PROSPERITY,"* 920 F.Supp. 416, 423 n. 10 (S.D.N.Y.1996) (finding injured party not entitled to "lost profits" where the bill of lading required carrier liability to be "adjusted and settled on the basis of the net invoice value").

■ Replacement cost is an appropriate measure of damages where the injured party could mitigate the loss by replacing the goods. Where the cargo owner is unable to replace the goods, "mere replacement costs deprive a manufacturer of expected profit ... and do not compensate him for what he 'would have had if the contract [of delivery] had been performed....'" *Polaroid,* 484 F.2d at 351 (alteration in original). Here, Nike was unable to replace the damaged property and therefore is entitled to the entirety of its actual loss which the district court correctly determined to be the market price at the destination.

■ Burlington finally argues that the replacement cost is the market value at the destination because the destination was a Nike distribution center. However, the wholesale price of pre-sold goods can serve as the proper measure of damages even when the shipment is destined for a warehouse or distribution center. *See Eastman Kodak Co. v. Westway Motor Freight, Inc.,* 949 F.2d 317, 318–320 (10th Cir.1991); *Polaroid Corp. v. Schuster's Express, Inc.,* 484 F.2d 349, 350 (1st Cir.

1973); *Goldenberg v. World Wide Shippers & Movers of Chicago,* 236 F.2d 198, 200, 202 (7th Cir.1956).

AFFIRMED.