**REGAL–BELOIT CORPORATION,**
**Plaintiff,**

v.

**KAWASAKI KISEN KAISHA,**
**LTD., et al.   Defendant.**

**No. CV06–3016DSF.**

United States District Court,
C.D. California.

Nov. 13, 2006.

---

Dennis A. Cammarano, Dennis A. Cammarano Law Offices, Long Beach, CA, for Plaintiff.

Alan Nakazawa, Dena S. Aghabeg, Cogswell Nakazawa & Chang, Long Beach, CA, Leslie G. McMurray, Leslie G. McMurray Law Offices, Valley Village, CA, for Defendant.

## ORDER GRANTING DEFENDANTS' MOTION TO DISMISS PURSUANT TO THE TOKYO DISTRICT COURT FORUM SELECTION CLAUSE IN THE BILL OF LADING

FISCHER, District Judge.

## I. INTRODUCTION

By this motion Defendants seek to dismiss this action pursuant to the Tokyo District Court forum selection clause in the K–Line Bills of Lading.

## II. FACTS

During March and April of 2005, Defendants Kawasaki Kisen Kaisha, Ltd. ("Kawasaki") and "K" Line America, Inc. ("K–Line") accepted cargo shipments from Plaintiffs,[1] to be carried from Shanghai, China to various delivery points within the United States via the Port of Long Beach.[2] (*See* Declaration of Jian Jia Ying ("Ying Decl.") ¶¶ 4, 8; Declaration of Thomas Kwok ("Kwok Decl.") ¶ 5; Declaration of Hua Gui Xing ("Xing Decl.") ¶ 4, 5.) The shipments were undertaken pursuant to contractual agreements between Defendants and each of the Plaintiffs, which were memorialized in Bills of Lading.

The Bills of Lading include the following relevant provisions:

Clause 1 (Definitions & Tariff)

(1)(b) "Carrier" means KAWASAKI KISEN KAISHA, LTD., Vessel, her owners, operators and charterers whether acting as carrier or bailee . . .

(d) "Connecting Carrier" means carriers (other than Carrier), contracted by or acting on behalf of Carrier, participating in Carriage of Goods by land, water or air under this Bill of Lading . . .

(h) "Merchant" includes the shipper, consignor, consignee, owner and receiver of Goods . . . .

Clause 2 (Governing Law and Jurisdiction)

The contract evidenced by or contained in this Bill of Lading shall be governed by Japanese law except as may be otherwise provided for herein, and any action thereunder or in connection with Carriage of Goods shall be brought before the Tokyo District Court in Japan, to whose jurisdiction Merchant irrevocably consent [sic].

Clause 5 (Sub–Contracting: Exemptions, Immunities, Limitations, etc. of Participant(s))

---

**1.** Plaintiffs in this case are Regal–Beloit Corporation (Case No. 06–3016), a Wisconsin Corporation with its principal place of business at 200 State Street, Beloit, Wisconsin 53511 (Regal Compl. ¶ 1); Victory Fireworks, Inc. (Case No. 06–3017), a Wisconsin Corporation with its principal place of business at 579 Vincent Lane, Ellsworth, Wisconsin 54011 (Victory Compl. ¶ 1); PICC Property and Casualty Company, Ltd. (Case No. 06–3018), a foreign insurance company with its principal place of business at 2 Floor, 700 Zhongshan Road (S), Shanghai 2000010, China (PICC Compl. ¶ 1); and Royal & Sun Alliance Insurance Co., Ltd. (Case No. 06–3019), a foreign insurance company based in the United Kingdom with its principal office at 9th Floor, One Plantation Place, 30 Fenchurch Street, London, EC3M 3BD (Royal Compl. ¶ 1). Although originally filed separately, these four cases were consolidated into a single action on August 8, 2006. (Aug. 8, 2006 Stipulation Order to Consolidate.)

**2.** The shipment was made pursuant to "through bills of lading" whereby the carrier and shipper contracted for transportation across the ocean and to inland destinations under a contract of carriage.

(1) Carrier shall be entitled to subcontract on any terms whatsoever Carriage, including without limitation, the loading, unloading, storing, warehousing, handling and any and all duties whatsoever undertaken by Carrier in relation to Goods by any of the following: (I) any Connecting Carrier ... (III) sub-contractors, ... agents and independent contractors ...

(2) Merchant undertakes that ... [w]ithout prejudice to the foregoing, every such vessel and Such Participant(s) shall have the benefit of all provisions herein benefitting Carrier as if such provisions were expressly for their benefit; and in entering into this contract, Carrier, to the extent of those provisions, does so not only on its own behalf, but also as agent and trustee of such vessel and Participant(s).

(Declaration of Alan Nakazawa ("Nakazawa Decl."), Ex. A at A–5.)

Plaintiffs and Defendant Kawasaki also entered into service contracts whereby Plaintiffs agreed to ship a minimum quantity of containers and Kawasaki agreed to transport the cargo at a specified rate. (Declaration of Dennis A. Cammarano ("Cammarano Decl."), Exs. 2–5.)

The cargo was loaded on board Kawasaki's ocean carriers in Shanghai and Hong Kong, and was carried across the Pacific Ocean to Long Beach where it was turned over to K–Line. K–Line subsequently delivered the cargo to Union Pacific Railroad Company ("UP"), with whom it had subcontracted to carry the cargo by rail to its final destination.

The contract between K–Line and UP was made pursuant to the Exempt Rail Transportation Agreement and the Master Intermodal Transportation Agreement ("MITA"). (Declaration of Sherry Johnson ("Johnson Decl."), Exs. A, B.) Section 1, Item 1.1D of MITA provides that MITA and the agreements and contracts referencing MITA are made pursuant to 49 U.S.C. § 10709. (Johnson Decl. Ex. B at B–49.)

The cargo was allegedly damaged or destroyed during a train derailment in Tyrone, Oklahoma on April 21, 2005. (Regal Compl. ¶ 9.) Plaintiffs brought suit in Los Angeles Superior Court, alleging that Defendants failed to carry, handle, monitor, and deliver the cargo so that it would be maintained in the same condition as when it was received. (Regal Compl. ¶ 9.) Defendant UP separately removed each Plaintiff's action to federal court in May of 2006.

### III. LEGAL STANDARD

A motion to dismiss premised on the enforcement of a forum selection clause is treated in the same manner as a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3). *R.A. Argueta v. Banco Mexicano S.A.*, 87 F.3d 320, 324 (9th Cir.1996). The Court is therefore permitted to "consider facts outside the pleadings." *Id.*

■ Interpretation and enforcement of contractual forum selection clauses are procedural issues to be decided under federal law. *Manetti–Farrow, Inc. v. Gucci Am., Inc.*, 858 F.2d 509, 513 (9th Cir.1988). Forum selection clauses are presumptively valid under federal law, and should not be set aside unless the party challenging the clause demonstrates that enforcement would be unreasonable and unjust. *See M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 12, 15, 92 S.Ct. 1907, 32 L.Ed.2d 513 (1972).

■ A forum selection clause is "unreasonable" if (1) it was incorporated into the contract as a result of fraud, undue influence, or overweening bargaining power, *id.* at 12–13, 92 S.Ct. 1907, (2) the selected forum is so "gravely difficult and inconven-

ient" that the complaining party will "for all practical purposes be deprived of its day in court," *id.* at 18, 92 S.Ct. 1907, or (3) enforcement of the clause would contravene a strong public policy of the forum in which the suit is brought. *Id.* at 15, 92 S.Ct. 1907. In order to establish that a forum selection clause is unreasonable, the non-moving party has the "heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient that the party would effectively be denied a meaningful day in court." *Pelleport Investors, Inc. v. Budco Quality Theatres, Inc.*, 741 F.2d 273, 281 (9th Cir.1984) (citing *Bremen*, 407 U.S. at 18, 92 S.Ct. 1907).

## IV. ANALYSIS

Kawasaki, K–Line, and UP's motion to dismiss is GRANTED because (1) the forum selection clause is *prima facie* enforceable, (2) the Carmack Amendment's venue provision does not apply, and (3) Defendants did not contractually agree to venue in New York.

### A. The Forum Selection Clause in the K–Line Bill of Lading is Enforceable and Applies to Plaintiff's Claims

The Court finds none of the benchmarks necessary for invalidating a forum selection clause: (1) there is no evidence of fraud, etc.; (2) Plaintiffs would not suffer any undue inconvenience, other than the expense of litigating in Tokyo, if the forum selection clause is enforced (*see Vimar Seguros y Reaseguros, S.A. v. M/V Sky Reefer*, 515 U.S. 528, 535–36, 115 S.Ct. 2322, 132 L.Ed.2d 462 (1995)) (holding that increased cost and inconvenience are insufficient reasons to invalidate foreign forum selection clauses); *Fireman's Fund Ins. Co. v. M.V. DSR Atl.*, 131 F.3d 1336, 1339 (9th Cir.1997) (same); and (3) there is no

public policy favoring litigation in the Central District of California. Indeed, the Supreme Court and Ninth Circuit have both held comparable clauses to be valid. *See Sky Reefer*, 515 U.S. at 540–41, 115 S.Ct. 2322 (holding that a Tokyo arbitration clause was *prima facie* valid)[3]; *Kukje Hwajae Ins. Co. v. M/V Hyundai Liberty*, 408 F.3d 1250, 1255 (9th Cir.2005) (holding that the district court abused its discretion when it failed to enforce a Korean forum selection clause). Nor have Plaintiffs argued that enforcing the forum selection clause would be unreasonable. Plaintiffs have consequently failed to satisfy their "heavy burden of showing that trial in the chosen forum would be so difficult and inconvenient" that they "effectively [would] be denied a meaningful day in court." *Pelleport Investors, Inc.*, 741 F.2d at 281.

■ Additionally, the forum selection clause applies to Plaintiffs' claims. Plaintiffs are "Merchants" under the terms of the Bills of Lading and are thus subject to their terms. By alleging that the cargo was carried under the K–Line Bills of Lading and that Defendants breached the Bills of Lading when the cargo was damaged (*see* Compl. ¶¶ 7, 16), Plaintiffs accepted the terms of the Bills of Lading and became bound by them. *See All Pac. Trading Corp. v. Vessel M/V Hanjin Yosu*, 7 F.3d 1427, 1432 (9th Cir.1993). The Court therefore concludes that the Tokyo District forum selection clause in the K–Line Bills of Lading is valid and enforceable.

### B. K–Line and UP are Entitled to the Benefit of the Bills of Lading Under the Himalaya Clauses[4] Contained Therein

■ Although the forum selection clause is included only in Kawasaki's Bills of Lad-

---

**3.** The same principles and analysis apply to both foreign arbitration clauses and foreign forum selection clauses. *Sky Reefer*, 515 U.S. at 534, 115 S.Ct. 2322; *Fireman's Fund*, 131 F.3d at 1336.

**4.** A "Himalaya Clause" is a clause in an ocean bill of lading that extends the benefit of the bill's defenses and limitations to downstream parties who have sub-contracted to

ing, both K–Line and UP are nevertheless entitled to its benefits. Clause 5 extends the benefits of those contracts to sub-contractors and agents. Himalaya Clauses of this type are valid and enforceable. *See, e.g., Norfolk S. Ry. Co. v. James N. Kirby, Pty Ltd.,* 543 U.S. 14, 31–32, 125 S.Ct. 385, 160 L.Ed.2d 283 (2004); *Inst. of London Underwriters v. Sea–Land Serv., Inc.,* 881 F.2d 761, 766–67 (9th Cir.1989). K–Line is Kawasaki's general agent in the United States (Johnson Decl. ¶ 5) and UP is a carrier with whom Kawasaki sub-contracted to provide overland transportation of the cargo (*see* Johnson Decl., Exs. A, B). Both K–Line and UP are consequently express beneficiaries of the K–Line Bills of Lading and therefore entitled to the benefit of the forum selection clause.

## C. The Carmack Amendment Does Not Apply to Kawasaki, K–Line, or UP

Plaintiff contends that the present action is wholly governed by the Carmack Amendment, 49 U.S.C. § 11706 *et seq.,* which severely limits venue and would prohibit bringing this action before the Tokyo District Court.

The Carmack Amendment governs the liability of rail carriers for carriage by land and water under receipts and bills of lading. The statute provides that "[a] rail carrier ... shall issue a receipt or bill of lading for property it receives for transportation" and that the "rail carrier and any other carrier that delivers the property and is providing transportation ... are liable to the person entitled to recover under the receipt or bill of lading" for any "actual loss or injury to the property caused by— (1) the receiving rail carrier; (2) the delivering rail carrier; or (3) another rail carrier over whose line or route the

perform the services contemplated by the bill. *Mori Seiki USA, Inc. v. M.V. Alligator Tri-*

property is transported in the United States ...." 49 U.S.C. § 11706(a).

The Carmack Amendment includes a special venue requirement.

A civil action under this section may only be brought—

(i) against the originating rail carrier, in the judicial district in which the point of origin is located;

(ii) against the delivering rail carrier, in the judicial district in which the principal place of business of the person bringing the action is located if the delivering carrier operates a railroad or a route through such judicial district, or in the judicial district in which the point of destination is located; and

(iii) against the carrier alleged to have caused the loss or damage, in the judicial district in which such loss or damage is alleged to have occurred.

49 U.S.C. § 11706(d)(2)(A). Thus, the Carmack Amendment restricts venue for actions arising under § 11706.

The statutory history further supports the conclusion that Congress intended to restrict venue for actions against rail carriers. Prior to the 1980 Amendment to the Carmack Act, plaintiffs were able to bring suit against carriers in any judicial district where the carrier operated. Recognizing that this approach made "venue ... virtually uncontrollable and frequently, inconvenient," Congress amended the Act to restrict such action. *See* H.R.Rep. No. 96–1430, at 102 (1980). If applicable, the Carmack Amendment would limit venue in this case to California, Oklahoma, or Wisconsin, and render unenforceable the Tokyo District Court forum selection clause.

*umph,* 990 F.2d 444, 450 (9th Cir.1993).

The Carmack Amendment's venue provision, however, does not apply to either the overseas or inland leg of the cargo shipment. The Carmack Amendment "encompasses the *inland leg* of an overseas shipment conducted under a single 'through' bill of lading," such as the one in this case "to the extent that the shipment runs beyond the dominion of the Carriage of Goods by Sea Act" ("COGSA"), 46 U.S.C. app. §§ 1300–1315. *Neptune Orient Lines, Ltd. v. Burlington N. & Santa Fe Ry. Co.*, 213 F.3d 1118, 1119 (9th Cir.2000) (emphasis added). The overseas leg of the cargo transport is thus subject to COGSA, which governs the rights and liabilities of shippers and ocean carriers and "applies to all cargo shipments which are carried by sea, to or from the United States." *Mori Seiki USA. Inc.*, 990 F.2d at 447. Under COGSA, cargo is in carriage "from the time when the goods are loaded on to the time when they are discharged from the ship." 46 U.S.C. app. § 1301(e). During this time period, COGSA applies as a matter of law. *See Hoegh Lines v. Green Truck Sales, Inc.*, 298 F.2d 240, 242 (9th Cir.1962). COGSA, unlike the Carmack Amendment, does not limit venue. The Tokyo District Court forum selection clause is therefore valid as to the overseas portion of the cargo transport.

Although the rail portion of interstate transport would typically fall under the auspices of the Carmack Amendment, the Bills of Lading here were made pursuant to 49 U.S.C. § 10709. Section 10709 is part of the Staggers Rail Act of 1980, Pub.L. No. 96–448, 94 Stat. 1895. The Act provides that "[n]othing in ... section 11706 of this title [the Carmack Amendment] shall prevent rail carriers from offering alternative terms." 49 U.S.C. § 10502(e). Courts have interpreted this provision to mean that carriers and shippers may contract out of the Carmack Amendment's provisions, either in whole or in part. *See, e.g., Co–Operative Shippers, Inc. v. Atchison, Topeka & Santa Fe Ry. Co.*, 840 F.2d 447 (7th Cir.1988); *Yamazen U.S.A., Inc. v. Chi. & Nw. Transp. Co.*, 790 F.2d 621 (7th Cir.1986); *Ferrostaal, Inc. v. Union Pac. R.R. Co.*, 109 F.Supp.2d 146 (S.D.N.Y.2000).

■ Section 10709 provides:

(a) [R]ail carriers providing transportation subject to the jurisdiction of the Board under this part may enter into a contract with one or more purchasers of rail services to provide specified services under specified rates and conditions.

. . .

(c)(2) The exclusive remedy for any alleged breach of a contract entered into under this section shall be an action in an appropriate State court or United States district court, *unless the parties otherwise agree.*

(emphasis added). Section 10709 thus specifically contemplates that the parties to a rail service contract may contractually agree to litigate in a forum other than that provided by the Carmack Amendment. *See Dow Chem. Co. v. Union Pac. Corp.*, 8 F.Supp.2d 940, 941 (S.D.Tex.1998) ("It is clear that the purpose of § 10709 is to allow parties the ability to alter federal mandates, or to avoid federal control and oversight over rail contracts."). The parties in this case contracted to litigate all claims in the Tokyo District Court and thereby rendered inoperable the Carmack Amendment's venue provision.

**4. Kawasaki and K–Line Did Not Contract for a United States Venue**

■ Finally, the service contracts between Plaintiffs and Kawasaki do not apply to the present action. The service contracts provide that (1) the Plaintiffs agree to ship a minimum number of containers from certain points of origin to certain destinations at specified rates, and (2) Defendant Kawasaki agrees to carry

any such cargo at the specified rates. (Cammarano Decl., Exs. 2–5.) In the event of any legal dispute or breach, the service contracts provide that "[t]he substantive law of the state of New York shall govern *this Contract* and the parties submit to the jurisdiction of the U.S. District Court for the Southern District of New York." (Cammarano Decl., Ex. 2 at ¶ XII (emphasis added).) Finally, the service contracts provide that "[a]ll terms and conditions ... of Carrier's applicable Bill of Lading form ... shall apply to all shipments hereunder, notwithstanding any term of this contract." (Cammarano Decl., Ex. 2 at ¶ VIII.) By their terms, the service contracts govern only claims for breach of their pricing and shipping provisions. The service contracts do not extend to claims for cargo damage, nor do they modify the terms and conditions set forth in the Bills of Lading. The Bills of Lading are the applicable contracts of carriage governing liability for cargo damage, and the service contracts' provisions for New York jurisdiction are therefore inapplicable to the present case.

## V. CONCLUSION

For the foregoing reasons, the Court GRANTS Defendants' motion to dismiss pursuant to the Tokyo District Court forum selection clause.

IT IS SO ORDERED.